**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE RODRIGUEZ,
          *Petitioner-Appellee,*

          v.

DENNIS SMITH, Warden,
          *Respondent-Appellant.*

No. 07-16014

D.C. No.
CV-07-00190-LJO/
DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
March 11, 2008—San Francisco, California

Filed September 4, 2008

Before: Procter Hug, Jr., Pamela Ann Rymer, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson;
Dissent by Judge Rymer

12255

## COUNSEL

McGregor W. Scott, Thomas E. Flynn, Sacramento, California (briefed), and Phillip A. Talbert, Sacramento, California (argued), for respondent-appellant Dennis Smith.

Stephen R. Sady, Portland, Oregon, for petitioner-appellee Jose Rodriguez.

## OPINION

RAWLINSON, Circuit Judge:

Petitioner-Appellee Jose Rodriguez (Rodriguez) filed a petition for writ of habeas corpus seeking an order directing the Bureau of Prisons (BOP) to immediately consider transferring Rodriguez to a Residential Re-entry Center (RRC)[1] pursuant to the factors set forth in 18 U.S.C. § 3621(b), and without reference to certain BOP policies that he asserted contradict the plain language and intent of § 3621(b). The district court granted the petition. Respondent-Appellant Warden Dennis Smith (Smith) appeals the district court's order. We conclude that the BOP's categorical exercise of discretion as promulgated in 28 C.F.R §§ 570.20 and 570.21 violates Congress's intention regarding the statutory inmate placement and transfer considerations the BOP must undertake, and we affirm the district court's decision.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Factual Background

Rodriguez pled guilty to charges of conspiracy to distribute methamphetamine and money laundering, and, in April, 2001, was sentenced to 195 months in federal prison. His projected release date is November 11, 2013.

When Rodriguez was advised that he would not be eligible for consideration for RRC placement until 11-13 months immediately preceding his projected release date, he filed a petition for a writ of habeas corpus challenging the BOP regulations that prevented him from being immediately considered

---

[1]Although the parties both agree that RRCs were formally referred to as Community Correction Centers (CCCs) and are commonly known as "halfway houses," Smith refers to them as RRCs and Rodriguez uses the term CCC. This opinion will use the term RRC throughout.

for RRC placement. The petition asserted that the BOP's policy directly conflicts with 18 U.S.C. § 3621(b). Having served "over 60 percent" of his sentence, Rodriguez argued that he was eligible for consideration for a less restrictive placement.

The magistrate judge recommended that the district court grant the petition, stating: "[A]lthough the BOP has discretion to refuse to place an inmate in a correctional facility, the exercise of discretion must be based at least in part on the specific factors outlined in § 3621(b), and the BOP regulations set forth in §§ 570.20 and 570.21 simply ignore those factors. As such, the regulations contradict, rather than interpret, § 3621(b), and no deference is owed." The magistrate judge also recommended that Smith "be [ordered] to consider the appropriateness of transferring [Rodriguez] to an RRC in light of the factors set forth in § 3621(b), not excluding any other factors deemed appropriate by the BOP, without reference to [the challenged] BOP policy . . ."

The district court adopted the Findings and Recommendation and granted the petition. Smith filed a timely notice of appeal.

## B.  Statutory and Regulatory Background

Under 18 U.S.C. § 3621(b), the BOP has authority to designate the place of an inmate's imprisonment.[2] Prior to Decem-

---

[2]Section 3621(b) provides:

**§ 3621 Imprisonment of a convicted person**

. . .

**(b) Place of imprisonment.**—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which

ber 13, 2002, the BOP exercised its discretion to allow a prisoner to serve all or part of his imprisonment in an RRC. *See* 69 Fed. Reg. 51213 (Aug. 18, 2004). This practice came to an end following the issuance of a legal opinion by the Office of Legal Counsel (OLC) of the Department of Justice advising that § 3621(b) did not authorize the BOP to place an inmate in an RRC for the entire term of his sentence, because community confinement did not constitute imprisonment. *Id.* The OLC relied on 18 U.S.C. § 3624(c) and the OLC's understanding that this section allowed placement in community confinement only during the last ten percent of the prison sentence being served. *Id.*

Accordingly, effective December 20, 2002, the BOP changed its procedure to limit the time during which an

---

the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

    (1)   the resources of the facility contemplated;

    (2)   the nature and circumstances of the offense;

    (3)   the history and characteristics of the prisoner;

    (4)   any statement by the court that imposed the sentence—

       (A)   concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

       (B)   recommending a type of penal or correctional facility as appropriate; and

    (5)   any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b).

inmate was eligible for placement in an RRC to the final ten percent of his sentence, or six months, whichever was shorter. *Id.* However, the BOP's "change was challenged in the Federal courts." *Id.* Both the First and the Eighth Circuits found this policy unlawful because it failed to recognize the BOP's discretion to transfer an inmate to an RRC at any time and was therefore contrary to the plain meaning of § 3621. *See Goldings v. Winn*, 383 F.3d 17, 24 (1st Cir. 2004); *see also Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004).

In response to these decisions, the BOP changed course. Contradicting its earlier position in 2002 that it lacked authority to place an inmate in an RRC prior to the end of the inmate's sentence, the BOP recognized that it generally has discretion under § 3621(b) to an place inmate in an RRC at any time. 69 Fed. Reg. 51213. However, the BOP elected to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." *Id.*

The final rules were published as 28 C.F.R. §§ 570.20, 570.21 on January 10, 2005, *see* 70 F.R. 1659, 2005 WL 34181, and became effective on February 14, 2005.[3] *Id.*

---

[3]Section 570.20 provides:

### § 570.20 What is the purpose of this subpart?

(a)   This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b)   As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.20.

Section 570.21 provides:

### C.   Other Circuit Court Decisions

Although this case raises an issue of first impression in this Circuit, as discussed below, five other circuits have directly addressed the matter. *See Muniz v. Sabol*, 571 F.3d 29 (1st Cir. 2008); *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 244 (3d Cir. 2005); *Fults v. Sanders*, 442 F.3d 1088, 1091 (8th Cir. 2006); and *Wedelstedt v. Wiley*, 477 F.3d 1160, 1161-62 (10th Cir. 2007). The Second, Third, Eighth and Tenth Circuits have each concluded that Congress's intent regarding inmate placement and transfer as codified is clear from the plain language of 18 U.S.C. § 3621(b), and the BOP regulations establishing a categorical temporal limitation on eligibility for RRC placement contravene the plain meaning of the statute. Only the First Circuit has upheld the BOP regulations as an appropriate exercise of the BOP's discretion.

## II.   STANDARD OF REVIEW

We review questions of statutory interpretation *de novo*. *United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007). "Because this case involves an administrative agency's

---

**§ 570.21 When will the Bureau designate inmates to community confinement?**

(a)   The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b)   We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. § 570.21.

construction of a statute that it administers, our analysis is governed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 . . ." *Mujahid v. Daniels,* 413 F.3d 991, 997 (9th Cir. 2005) (citations omitted).

Under the *Chevron* framework we must "first determine[ ] if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear." *Id.* (citation and internal quotation marks omitted). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43 (footnote reference omitted).

## III.   DISCUSSION

### A.   The BOP Regulations Violate the Clear and Unambiguous Congressional Intent Expressed in § 3621(b).

Employing the *Chevron* analysis, we must first determine whether Congress's intention regarding the BOP's discretion in determining prisoner placements and transfers is clear from the text of 18 U.S.C. § 3621(b). If the statute is clear, we then decide whether the BOP's regulations violate that clearly expressed intent. *Chevron,* 467 U.S. at 842-43.

Smith relies on 18 U.S.C. § 3624(c) to explain the interplay between the BOP regulations and § 3621(b). He argues that because § 3624(c) limits when an inmate may be placed in an RRC, "prisoners have no right to be considered for an RRC placement until they have finished 90% of their sentence. Seen from this point of view, the BOP's decision in the regulations to impose exactly this limitation is not only a reasonable interpretation of the statute, but the only reasonable interpretation." In essence, Smith contends that in light of § 3624(c), Congress's intent with respect to § 3621(b) is not clear from the statute, and thus deference is owed to the

BOP's interpretations (as expressed in 28 C.F.R. §§ 570.20 and 570.21).

**[1]** However, the plain language of both §§ 3621(b) and 3624(c) make clear that this argument must fail. Section 3621(b) provides in part that "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise. . . . The Bureau may ***at any time*** . . . direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b) (emphases added).

**[2]** Section 3624(c) provides: "The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." 18 U.S.C. § 3624(c).[4]

**[3]** Contrary to Smith's argument that § 3624(c) limits placement in RRCs to the last ten percent of the sentence being served, the statute provides that "*of*" the last ten percent of the prisoner's sentence, the BOP shall, to the extent practicable, allow a prisoner to spend up to six months of that time in an institution such as an RRC. *See id.* (emphasis added). Thus, although this statute imposes an affirmative duty on the BOP to consider placing an inmate in community confinement or a similar pre-release alternative toward the end of the inmate's prison term, it does not interfere with the BOP's dis-

---

[4]Section 3624(c) was amended effective April 9, 2008, slightly rewording the affirmative duty of the BOP to ensure to the extent practicable the release of a prisoner during the final months of the prisoner's term. The statutory amendment does not affect this opinion.

cretionary authority to consider such placement prior to the last ten percent of the prison term.

As noted, a majority of the other circuit courts that have considered this issue have concluded that the BOP's interpretation of § 3624(c) is misplaced. *See Wedelstedt,* 477 F.3d at 1166 ("Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration.") (citations omitted); *see also Woodall,* 432 F.3d at 250; *Goldings,* 383 F.3d at 24*; Elwood,* 386 F.3d at 845-47.[5]

---

[5]In support of his position that § 3624(c) limits placement into RRCs, Smith invokes our decision in *United States v. Latimer,* 991 F.2d 1509, 1514-15 (9th Cir. 1993), for the proposition that "[n]othing in § 3621(b) requires the BOP to recognize an RRC as an acceptable substitute for a term of imprisonment and [we] would be going against the *Latimer* ruling if [we] were to hold that RRCs were generally intended, or even permissible, places for serving a sentence of imprisonment." In *Latimer,* we held that based on the differentiation of detention in community treatment centers and incarceration in prison in various sections of the United States Sentencing Guidelines, the defendant's confinement in a community treatment center did not constitute imprisonment for purposes of calculating his criminal history score under Section 4A1.2(e)(1). *Latimer,* 991 F.2d at 1514. In reaching this conclusion, we noted that the Commission had not "clearly said whether confinement in a community treatment center qualifies as incarceration," and relied upon the rule of lenity as further support for our reading of the Guidelines, noting that the question would determine whether the defendant would be required to spend "an additional 15 years of his life behind bars." *Id.*

More recently, we ruled that placement in a Pre-Release Center did not constitute imprisonment under 18 U.S.C. § 3624(e), and therefore did not toll the defendant's supervisory release period. *United States v. Sullivan,* 504 F.3d 969, 971-72 (9th Cir. 2007); *see also Reno v. Koray,* 515 U.S. 50, 63-65 (1995) (holding that time spent by prisoner at a community treatment center while "released on bail" was not "official detention") (internal quotation marks omitted). However, in *Latimer,* our holding was limited to Section 4A1.2 of the Sentencing Guidelines to calculate the

**[4]** Section 3621(b) specifically provides that the BOP has discretion to place an inmate into "any available penal or correctional facility" and to "direct the transfer of an inmate from one penal or correctional facility to another" "at any time." 18 U.S.C. § 3621(b). In contrast, the plain language of § 3624(c) addresses the separate and unrelated authority and obligation to place inmates into RRCs during the last ten percent of their sentences. Thus, we agree with the Tenth Circuit's conclusion in *Wedelstedt* that "§ 3624(b) has no bearing on whether §§ 570.20 and 570.21 are consistent with the § 3621(b) statutory scheme for BOP placement and transfer determinations." 477 F.3d at 1166.

**[5]** Stripped of the attempted link to § 3624(c), Smith's contention that the BOP's temporal restriction on RRC placement comports with § 3621(b) is singularly unpersuasive. The BOP regulations necessarily violate the unambiguously expressed intent of Congress conveyed in § 3621(b), which

---

defendant's criminal history score, *see* 991 F.2d at 1514, and in *Sullivan*, to 18 U.S.C. § 3264(e), to determine tolling of the supervised release period. *See* 504 F.3d at 972.

In both cases, an important factor was our recognition that ambiguous provisions should be interpreted for the benefit of the defendant/releasee. *See Latimer*, 991 F.2d at 1514 (applying the rule of lenity to "resolve ambiguities in favor of the criminal defendant."); *see also Sullivan*, 504 F.3d at 972-73 (interpreting § 3264(e) and concluding that the supervised release period had expired, precluding revocation). These cases offer no assistance to Smith for two reasons. First, as discussed above, the statutory provisions in this case are unambiguous. Second, even if the provisions were ambiguous, the rule of lenity would dictate an interpretation favoring earlier placement in an RRC.

In any event, the BOP itself has acknowledged that § 3261(b) grants it the authority to "place offenders sentenced to a term of imprisonment in [RRCs]." *See* 69 Fed. Reg. at *51213. Indeed, this discretion to place inmates into RRCs is the basis for the very BOP regulations Smith seeks to have upheld in this case. *See Levine*, 455 F.3d at 82. Thus, a discussion of whether confinement in an RRC constitutes imprisonment does not resolve the issue we face.

expressly instructs that all placement and transfer determinations take into consideration *each* of the five factors enumerated in the statute.[6] That Congress intended the BOP to apply each of the factors is evidenced by the invocation of the word "and" between the fourth and fifth factors. See Wedelstedt, 477 F.3d at 1165 66; *see also Hawaiian Telephone Co. v. Public Utilities Com'n*, 827 F.2d 1264, 1273 (9th Cir. 1987) (noting that use of the conjunctive indicates that *all* of the conditions listed must be met).

As aptly stated in *Wedelstedt*, 477 F.3d at 1116, "[t]he relationships between the two statutes and between § 3621(b) and the regulations . . . lie at the core of the dispute . . ."

"18 U.S.C. § 3621(b) . . . gives the agency discretion . . . . This delegation of discretion, however, is cabined by further mandatory direction . . . to consider the five factors enumerated in the statute . . ." *Id.* at 1165 (citation, alteration and internal quotation marks omitted).

"After considering the language of § 3621(b) and the relationship between its qualified grant of discretion and § 3624(c)'s affirmative obligation," the Tenth Circuit saw no conflict between the two statutes. *Id.* at 1166.

The Tenth Circuit explained that:

> The statutory command in § 3621(b) stands alone as a clear and unambiguous articulation of congressio-

---

[6]The factors the BOP must consider under § 3621(b) are: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b).

nal intent regarding the process by which the BOP should make placement and transfer determinations. Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration.

*Id.* at 1166 (citations omitted); *see also Levine*, 455 F.3d at 75 ("[T]he combined import of the statutes was to give the BOP discretion to transfer an inmate to a CCC for a period longer than six months or ten percent of his sentence, but to oblige the BOP, where practicable, to transfer inmates to a CCC for a reasonable part of the last ten percent, not to exceed six months of his sentence.") (citations omitted).

The Second Circuit is in accord. *See Levine*, 455 F.3d at 82 (noting that § 3621(b) authorizes the BOP to "place a prisoner where it wishes so long as it considers the factors enumerated . . .") (citations and emphasis omitted); *see also Woodall*, 432 F.3d at 245; *Fults*, 442 F.3d at 1092.

We are persuaded that the BOP regulations conflict with the provisions of § 3621(b). As the Third Circuit decision explained: "While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated." *Woodall*, 432 F.3d at 247. We agree with the Third Circuit that an "unavoidable conflict" exists because the statute requires the BOP to consider five factors in determining CCC placement, while the regulation provides that the enumerated factors will not be fully considered. *Id.* at 249. We also join the Third Circuit in its conclusion that the regulations' construction is not "permissible . . . because they fail to take into account Congress's indications that certain individualized factors . . . should be considered . . ." *Id.* (citation omitted); *see also Levine*, 455 F.3d at 85 ("Categorical rule-

making, like all forms of agency regulation, must be consistent with unambiguous Congressional instructions . . ."); *Fults*, 442 F.3d at 1091.

**[6]** In *Muniz*, the First Circuit concluded that the five factors listed in § 3621(b) were not exclusive. *Muniz*, 517 F.3d at 35. The First Circuit added that, in its view, "[n]othing in this passage requires consideration of the five factors for every facility or type of facility that is *ruled out.* Nor is there a clear expression of intent to withhold the authority to make rules of general applicability." *Id.* at 38 (emphasis in original). We agree with the First Circuit that the statute contains no specific prohibition on rules of general applicability. The problem, however, is that the rules of general applicability promulgated by the BOP categorically exclude inmates from RRC eligibility without considering the mandatory factors articulated in § 3621(b). Although, as the First Circuit recognized, other factors may be considered, § 3621 and the accompanying legislative history embody unambiguous Congressional intent that the five factors not be ignored. *See* 18 U.S.C. § 3621(b); *see also* S. Rep. No. 98-225, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3324-25 ("In determining the available or suitability of the facility selected, the Bureau is *specifically required* to consider such factors as the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case, any recommendations as to type of facility made by the court, and any pertinent policy statements issued by the sentencing commission . . . *After considering these factors*, the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility, or may transfer the offender to another appropriate facility.") (emphases added) (footnote reference omitted).

Because the BOP regulations categorically exclude CCC placement of inmates with more than ten percent of their sen-

tences remaining, they necessarily fail to apply the mandatory factors listed in § 3621(b) to those inmates. This failure to consider the five statutory factors when considering eligibility for placement in or transfer to an RRC violates Congress's clear intent that each of these factors be applied in making inmate transfer or placement determinations to "*any* available penal or correctional facility." 18 U.S.C. § 3621(b) (emphasis added).

**[7]** The *Muniz* opinion "emphasize[d] that were the regulations to leave little or no room for the opportunity of the individualized assessment implied by Congress, we would regard that as contrary to intent of the statute." 517 F.3d at 39 n.17. However, that is precisely what the categorical BOP regulations accomplished - they left "no room for the operation of the individualized assessment" expressly mandated in § 3621(b). *Id.* We cannot agree with the First Circuit that the categorical failure to comply with unambiguously expressed Congressional intent can be rationalized away. Rather, we agree with the Second, Third, Eighth and Tenth Circuits' conclusions that the BOP regulations cannot be reconciled with the unambiguous congressional intent expressed in § 3621(b). *See Wedelstedt*, 477 F.3d at 1162; *Levine*, 455 F.3d at 87; *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 249. Accordingly, the regulations are invalid under *Chevron*.

## B. The Supreme Court's Ruling in *Lopez* Does Not Support the BOP's Categorical Exercise of Discretion.

Relying on the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230 (2001), the First Circuit held that "[t]he question whether a CCC is an appropriate facility for any prisoner during the first ninety percent of a term is a subset" of the broader question of "what specific facility is the right one to house each prisoner." *Muniz*, 517 F.3d at 39. The First Circuit reasoned that deciding that "subset" "on a categorical basis is not the same as deciding the final issue of placement on a categorical basis." *Id.* However, this linguistic hairsplitting does

not change the fact that the regulations thwart the explicitly expressed will of Congress.

In *Lopez*, the Supreme Court upheld a BOP regulation that categorically excluded inmates convicted of offenses involving firearms from discretionary early release eligibility under 18 U.S.C. § 3621(e)(2)(B). 531 U.S. at 233. However, the Supreme Court expressly noted that § 3621(e)(2)(B) did not require "individualized determinations." *Id.* at 243-44. The Court also emphasized that Congress was silent as to the "precise question at issue" and a "statutory gap" existed. *Id.* at 242.

The Court in *Lopez* pointedly discussed the absence from the statutory language of any criteria the BOP could use in applying the statute. *Id.* In contrast, § 3621(b) provides a list of five factors, all of which the BOP must consider in determining prisoner placement. *See* 18 U.S.C. § 3621(b)(1)-(5). Moreover, at least three of these factors are inmate-specific. *See id.* at § 3621(b)(2)-(4) (calling for consideration of "(2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; [and] (4) any statement by the court that imposed the sentence . . .). Thus, unlike the statute in *Lopez*, the BOP is not left without any guidance on how to apply the statute.

We echo the observations made by the Tenth Circuit:

> *Lopez* makes clear . . . that an agency's authority to promulgate categorical rules is limited by clear congressional intent to the contrary. In other words, *Lopez* applies only when Congress has not spoken to the precise issue and the statute contains a gap. The Lopez Court was careful to state that 18 U.S.C. § 3621(e)(2)(B) . . . did not identify any criteria for the BOP to use . . . Section 3621(b), in contrast, enumerates five factors, including three that are specific to the individual prisoner . . .

*Wedelstadt*, 477 F.3d at 1168 (citations omitted); *see also Levine*, 455 F.3d at 86; *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 247 (noting that "sentencing recommendations and other individual factors . . . are not generally applicable[,]" as was the case in *Lopez*, where the only factor at issue was use of a firearm during the crime of conviction. "Moreover, Congress *did* appear to express intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors.") (emphasis in the original).

Like the majority of our sister circuits that have considered this argument, we are not persuaded that *Lopez* supports the BOP's categorical exercise of discretion when administering § 3621(b).

Finally, we are not convinced that reference to some of the factors in the BOP regulations translates into compliance with the statutory command contained in § 3621(b). *See Muniz*, 517 F.3d at 39. As the Tenth Circuit astutely remarked:

> The BOP cannot validate this otherwise invalid regulation by claiming to have categorically considered the five statutory factors during the rulemaking process. The individualized nature of three of the five factors - the nature of the prisoner's offense, the prisoner's history and characteristics, and the sentencing judge's statement - made such consideration impossible.

*Wedelstadt*, 477 F.3d at 1168 (citing *Fults*, 442 F.3d at 1092); *see also Woodall*, 432 F.3d at 248.

## IV.   CONCLUSION

The BOP's regulations conflict with the plain language of 18 U.S.C. § 3621(b) as to when an inmate may be considered for initial placement in or transfer to an RRC. We therefore AFFIRM the district court's order granting the writ of habeas

corpus ordering the BOP to promptly consider Rodriguez for transfer to an RRC without reference to 28 C.F.R. §§ 570.20 and 570.21.

**AFFIRMED.**

---

RYMER, Circuit Judge, dissenting:

While I understand joining the parade of courts to decide this issue, I would reverse for the reasons stated in *Muniz v. Sabol*, 517 F.3d 29, 31 (1st Cir. 2008), and in Judge Raggi's well-reasoned dissent in *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006).