**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIM RAY SACORA,
　　　　　　*Petitioner-Appellant,*

LARRY L. BEAMAN; TODD H.
SONOBE,
　　　　　　*Petitioners-Intervenors,*

　　　　　　v.

JEFF E. THOMAS, Warden, Federal
Prison Camp, Sheridan, Oregon,
　　　　　　*Respondent-Appellee.*

No. 10-35553

DC No.
3:08-cv-0578 MA

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, District Judge, Presiding

Argued and Submitted
October 4, 2010—Portland, Oregon

Filed December 6, 2010

Before: A. Wallace Tashima, Richard A. Paez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the petitioner-appellant and petitioner-intervenors.

Kelly A. Zusman, Appellate Chief, Office of the United States Attorney, Portland, Oregon, for the respondent-appellee.

---

**OPINION**

TASHIMA, Circuit Judge:

Tim Ray Sacora, Larry L. Beaman, and Todd Sonobe (collectively "Petitioners") brought this habeas corpus action pursuant to 28 U.S.C. § 2241 challenging the policies by which the Bureau of Prisons ("BOP") places inmates in community correctional facilities, also known as residential re-entry centers ("RRCs").[1] Petitioners contend that the substance of the BOP's policies violates the statutory provisions that the policies purport to implement, 18 U.S.C. §§ 3621(b) and 3624(c), and that the procedure by which the policies were adopted violates the Administrative Procedure Act ("APA").

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We conclude that the BOP's policies violate neither the statutory provisions that they implement nor the APA. We therefore affirm the judgment of the district court.

## I.  BACKGROUND

### A.  Statutory and Regulatory Background

Two statutory provisions govern the BOP's authority to place inmates in its custody in RRCs: 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621 governs the authority of the BOP to designate a prisoner's placement in general while he or she is in the BOP's custody. In the context of RRCs, this section governs the BOP's authority in cases where a prisoner who has more than a year left to serve of his or her prison sentence

---

[1]These facilities are referred to in the governing statute as community corrections centers. *See* 18 U.S.C. § 3624(c).

requests a transfer to such a facility.[2] The policies and proce-
dures by which the BOP classifies and designates inmates is
set forth in its Program Statement 5100.08, *Inmate Security
Designation and Custody Classification* (2006) ("Program
Statement 5100.08"), *available at* http://www.bop.gov/policy/
progstat/5100_008.pdf.

Congress also charged the BOP with preparing prisoners
for reentry to the community during the final months of their
terms of imprisonment. *See* 18 U.S.C. § 3624(c). Pursuant to
this section, prisoners may be placed in a RRC or in home
confinement. The BOP's policies on the use of RRCs are set
forth in the agency's Program Statement 7310.04, *Community
Corrections Center (CCC) Utilization and Transfer Proce-
dure* (1998) ("Program Statement 7310.04"), *available at*
http://www.bop.gov/policy/progstat/7310_004.pdf.

---

[2]That governing statute provides:

> The Bureau of Prisons shall designate the place of the prisoner's
> imprisonment. The Bureau may designate any available penal or
> correctional facility that meets minimum standards of health and
> habitability established by the Bureau . . . that the Bureau deter-
> mines to be appropriate and suitable, considering—
>
>> **(1)** the resources of the facility contemplated;
>>
>> **(2)** the nature and circumstances of the offense;
>>
>> **(3)** the history and characteristics of the prisoner;
>>
>> **(4)** any statement by the court that imposed the sentence—
>>
>>> **(A)** concerning the purposes for which the sentence to
>>> imprisonment was determined to be warranted; or
>>>
>>> **(B)** recommending a type of penal or correctional facility
>>> as appropriate; and
>>
>> **(5)** any pertinent policy statement issued by the Sentencing
>> Commission pursuant to section 994(a)(2) of title 28.
>
> . . . . The Bureau may at any time, having regard for the same
> matters, direct the transfer of a prisoner from one penal or correc-
> tional facility to another . . . .

18 U.S.C. § 3621(b).

Prior to enactment of the Second Chance Act of 2007 ("SCA"), Pub. L. No. 110-199, 122 Stat. 657 (2008) (codified at 42 U.S.C. §§ 17501-17555), § 3624(c) provided that the BOP

> shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C.A. § 3624(c) (West 2008). The subsection also provided that this authority extended to placing a prisoner in home confinement. *Id.*

Section 3624(c) was amended on April 9, 2008, by the SCA to provide that the BOP

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Accordingly, after enactment of the SCA, § 3624 governs the designation of prisoners to RRCs for the final months of their sentences.[3]

(Text continued on page 19423)

---

[3]As amended, the statute in its entirety now provides:

**(c) Prerelease custody.**—

**(1) In general.**—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of

imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

**(2) Home confinement authority.**—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**—The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**—Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

**(5) Reporting.**—Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

**(6) Issuance of regulations.**—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is—

> **(A)** conducted in a manner consistent with section 3621(b) of this title;

> **(B)** determined on an individual basis; and

> **(C)** of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

On April 14, 2008, five days after the SCA went into effect, BOP officials issued a memorandum (the "April 14 Memorandum") explaining the changes to the law and setting forth guidance to BOP staff about how to administer the new law. On October 21, 2008, well past the 90 day deadline provided for in the SCA, the BOP issued the regulations required by the statute. *See* Pre-Release Community Confinement, 73 Fed. Reg. 62440-01 (Oct. 21, 2008) (codified at 28 C.F.R. §§ 570.20-.22). Noting that the statutory deadline of July 8, 2008, had passed, the BOP determined that "[a]dopting these rules through the normal notice-and-comment procedures would not be consistent with the short statutory time-frame provided for implementing these regulatory changes" and that "[r]equiring formal notice-and-comment procedures would be contrary to the public interest in this case." *Id.* at 62442. Accordingly, the BOP issued the regulations as an interim final rule, and chose to "forgo the requirement under 5 U.S.C. 552(d) which provides for regulations to go into effect 30 days after the date of publication." *Id.* Substantively, the regulations: (1) define the terms "community confinement" and "home detention"; (2) provide that inmates may be designated to community confinement as a condition of pre-release custody for a period not to exceed 12 months and to home detention for a period not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months;[4] and (3) provide that inmates will be considered for community confinement in a manner consistent with § 3621(b) on an individual basis, with placements of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

The April 14 Memorandum details the relevant statutory changes made by the SCA, explains how BOP staff should

---

18 U.S.C. § 3624(c).

[4]The regulations also provide that these periods of time can be exceeded where permitted by separate statutory authority.

make placement decisions in light of the statutory changes, and provides a redline of 18 U.S.C. §§ 3621 and 3624(c) demonstrating those changes. The memorandum advises that "[w]ith minor adjustments[,] . . . staff should make inmates' pre-release RRC placement decisions on an individual basis using current bureau policy, Program Statement No. 7310.04 . . . ." The memorandum goes on to note that because the SCA has increased the maximum allowable pre-release community corrections placement period to 12 months, BOP staff must review inmates for pre-release community corrections placements earlier than before, 17-19 months prior to their projected release dates. Further, it reminds staff that inmates must be individually considered for pre-release placements in community corrections facilities and that this individual consideration must be based on the criteria set forth in § 3621(b). Quoting § 3624(c)(6)(C), the April 14 Memorandum also notes that the SCA requires staff to ensure that pre-release placements in community corrections facilities are "of sufficient duration to provide the greatest likelihood of successful reintegration to the community," emphasizing that "[t]his means Bureau staff *must* approach every individual inmate's assessment with the understanding that he/she is now *eligible* for a maximum of 12 months pre-release RRC placement." Accordingly, the memo cautions that provisions in Program Statement 7310.04 reflecting "any other possible maximum timeframe must be ignored." However, the April 14 Memorandum also notes that

> [w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

On November 14, 2008, BOP officials issued another memorandum (the "November 14 Memorandum") which provides guidance to BOP staff when considering inmate requests for transfers to RRCs before the final 12 months of the inmate's sentence. It notes that "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]," and that "[s]taff cannot, therefore, *automatically* deny an inmate's request for transfer to a RRC." Instead, "inmate requests for RRC placement must receive individualized consideration." The memorandum further notes that "[t]elling an inmate that he/she is *ineligible* for RRC placement is the same as *automatically* denying the inmate from even being considered for such placement, and is not in accord with Bureau policy." However, as in the April 14 Memorandum, the November 14 Memorandum advises BOP staff that "a RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

## B.   Factual and Procedural Background

Petitioner Sacora, a prisoner at the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan"), filed, *pro se*, a petition for writ of habeas corpus challenging the policies by which the BOP made its determinations regarding community confinement. After counsel was appointed, Sacora moved for certification of a class of "[a]ll federal prisoners serving sentences in the District of Oregon who have been or will be considered for community corrections placement under 18 U.S.C. §§ 3621(b) and 3624(c)."

The district court found that Sacora met the requirements for class certification with respect to his claims under § 3624(c) and the April 14 Memorandum. It also found, however, that Sacora had not alleged any injury from application of the November 14 Memorandum or the BOP's refusal to exercise its discretion to place him in a RRC prior to the final 12 months of his sentence pursuant to § 3621(b). Accord-

ingly, the district court certified the class of prisoners injured by the application of § 3624(c) and the April 14 Memorandum. The court also granted leave either to amend the petition to allege injuries under § 3621(b) and the November 14 Memorandum, or to identify an additional class representative who could make such allegations. Subsequently, Petitioners Beaman and Sonobe, also prisoners at FCI Sheridan, sought leave to intervene and be named as class plaintiffs, alleging injuries pursuant to § 3621(b) and the November 14 Memorandum. The district court granted the motion to intervene and certified the following class:

> All federal prisoners serving sentences in the District of Oregon who have been denied or will be denied community corrections placement in excess of six months under 18 U.S.C. § 3624(c) and 18 U.S.C. § 3621(b), pursuant to [the April 14 Memorandum, the November 14 Memorandum,] Program Statement 7310.04, Program Statement 5100.08[5] and 28 C.F.R. § 570.20 et seq.

After Petitioners filed a second amended petition setting forth all claims of Sacora and the intervening Petitioners, the district court granted the petition with respect to the BOP's formal regulations, 28 C.F.R §§ 570.20-.22, finding that the BOP's failure to use notice-and-comment provisions in promulgating those regulations violated the APA, and enjoined the BOP from considering inmates for placement in RRCs pursuant to those regulations. The district court denied the petition in all other respects. Petitioners filed their notice of appeal the same day.[6]

---

[5]In its opinion and order granting in part and denying in part the petition for habeas corpus, the district court noted that Petitioners made no specific argument concerning Program Statement 5100.08. Accordingly, the district court considered the point abandoned. Petitioners have not challenged this determination on appeal.

[6]The BOP did not appeal the district court's invalidation of the SCA regulations, 28 C.F.R. §§ 570.20-.22, for failure to comply with the notice-and-comment provisions of the APA.

## II.  ANALYSIS

### A.  Standard of Review

"We review de novo a district court's decision granting or denying a petition for a writ of habeas corpus filed pursuant to [28 U.S.C.] § 2241." *Mora-Meraz v. Thomas*, 601 F.3d 933, 939 (9th Cir. 2010) (alteration in the original) (internal quotation marks omitted). We also review questions of statutory interpretation de novo. *See, e.g.*, *Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008). In addition, "[w]hether an agency pronouncement is interpretive or substantive is a legal question that we review de novo." *Mora-Meraz,* 601 F.3d at 939 (alteration in the original) (internal quotation marks omitted).

### B.  The  Challenged  Policies  Are  Reasonable Constructions of 18 U.S.C. §§ 3621(b) and 3624(c)

**[1]** In reviewing an agency's interpretation of a statute it administers, a court must "always" first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter[.]" *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Petitioners contend that, under § 3624(c), the SCA unambiguously forecloses the BOP from presuming that six months of RRC placement is sufficient in the typical case, because the statute "anticipates that the starting point for community corrections placements be 12 months . . . ." We disagree.

**[2]** Although Petitioners are correct that the statute mandates that the BOP's regulations "ensure that placement in a community correctional facility . . . is . . . of sufficient duration to provide the greatest likelihood of successful reintegration into the community," 18 U.S.C. § 3624(c)(6)(C), the statute also provides that this period is "*not to exceed* 12 months." 18 U.S.C. § 3624(c)(1) (emphasis added). In dele-

gating the authority to the BOP to adopt regulations imple-
menting the SCA, the space between "sufficient duration" and
"12 months" was expressly left to the BOP to fill. The BOP's
policy — that six months in a RRC constitutes a "sufficient
duration" in most cases, but that each inmate is eligible for a
12-month placement and must be considered for placement in
a RRC on an individual basis — is facially consistent with the
statute.[7]

**[3]** If the challenged policies had been adopted pursuant to
the notice-and-comment process, this would be the end of the
inquiry. *See United States v. Mead Corp.*, 533 U.S. 218, 226-
27 (2001) (holding that "administrative implementation of a
particular statutory provision qualifies for *Chevron* deference
when it appears that Congress delegated authority to the
agency generally to make rules carrying the force of law, and
that the agency interpretation claiming deference was promul-
gated in the exercise of that authority"); *Chevron*, 467 U.S. at
843 ("[I]f the statute is silent or ambiguous with respect to the
specific issue, the question for the court is whether the agen-
cy's answer is based on a permissible construction of the stat-
ute."). However, because Program Statement 7310.04 and the
April 14 Memorandum "do[ ] not purport to carry the force of
law and [were] not adopted after notice and comment,"[8] they
are not entitled to the level of deference provided for in

---

[7]The policy is also consistent with Congress' purpose in enacting the
SCA

> to assist offenders reentering the community from incarceration
> to establish a self-sustaining and law-abiding life by providing
> sufficient transitional services *for as short of a period as practi-
> cable*, not to exceed one year, unless a longer period is specifi-
> cally determined to be necessary by a medical or other
> appropriate treatment professional[.]

42 U.S.C. § 17501(a)(5) (emphasis added).

[8]We address the question of whether these pronouncements *should have*
been promulgated through notice-and-comment procedures below. *See
infra*, Part II.C.2.

*Chevron*. *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008). Despite not being entitled to *Chevron* deference, however, the challenged policies are still "entitled to a measure of deference" under *Skidmore v. Swift & Co.*, 323 U.S. 134 *(1944). Tablada*, 553 F.3d at 806; *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) ("It is true that the Bureau's interpretation appears only in a 'Program Statemen[t]' — an internal agency guideline . . . [b]ut BOP's internal agency guideline . . . is still entitled to some deference." (first alteration in the original)).

Under *Skidmore*, " '[t]he weight [accorded to an administrative] judgment . . . will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Mead,* 533 U.S. at 228 (second alteration in the original) (quoting *Skidmore*, 323 U.S. at 140). "*Mead* adds as other relevant factors the 'logic[ ] and expertness' of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1068 (9th Cir. 2003) (en banc) (alteration in the original) (quoting *Mead*, 533 U.S. at 228, 235), *amended in part by*, 360 F.3d 1374 (9th Cir. 2004).

**[4]** Analyzed in light of *Skidmore*, the BOP's policies are reasonable and sufficiently persuasive. The April 14 Memorandum provides that BOP "staff *must* approach every individual inmate's assessment with the understanding that he/she is now *eligible* for a maximum of 12 months pre-release RRC placement" and clearly states that "[p]rovisions in [Program Statement] 7310.04 that reflect any other possible maximum timeframe must be ignored."

**[5]** The April 14 Memorandum does note that "Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." The BOP, however, is entitled to use its experience in inter-

preting and administering a statute, as *Mead* recognizes. *See Mead*, 533 U.S. at 228 (noting that the "fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the . . . [agency's] relative expertness" in determining whether to grant that deference). Further, the SCA expressly provides that "[n]othing in [§ 3624(c)] shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Thus, the ultimate point of reference for RRC placement decisions under § 3624(c) is the set of factors set forth in § 3621(b), including the resources of the facility contemplated, the nature and circumstances of the offense, and the history and characteristics of the prisoner. *See* 18 U.S.C. § 3621(b). Given the statutory mandate that the BOP consider the resources of the facility to which it is considering designating a given prisoner when making placement decisions, it is not unreasonable for the agency to conserve the resources of RRCs by applying an extra check on the longest placements in RRCs. In addition, the BOP's decision to require unusual circumstances demonstrating a need for longer placements is persuasive given Congress' expressed purpose in enacting the SCA "to assist offenders reentering the community from incarceration . . . by providing sufficient transitional services for as short of a period as practicable." 42 U.S.C. § 17501(a)(5).

**[6]** As for the regulation's consistency with earlier pronouncements, ironically, it is Petitioners who argue that the challenged policies are *too* consistent with earlier pronouncements, by arguing that the BOP merely continued its previous rule without making changes Petitioners contend the SCA requires. The BOP did make changes to the rule, however, to accommodate the new statutory time frame: after the April 14 Memorandum each inmate's pre-release placement review was to take place somewhere between 17 and 19 months before the inmate's release, instead of the 11 to 13 months provided for in Program Statement 7310.04. *See* Program

Statement 7310.04, at 7. This change affords each inmate the opportunity to be placed in a RRC for the full 12 months the statute authorizes, should the circumstances justify it. Similarly, the April 14 Memorandum specifies that BOP staff must ignore provisions in the Program Statement reflecting any possible maximum time frame for RRC placement other than 12 months.

For substantially the same reasons, the similar policy set forth in the November 14 Memorandum is consistent with § 3621(b) and sufficient under *Skidmore*. Petitioners argue, however, that the policy as set forth in the November 14 Memorandum is contrary to our decision in *Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008). We disagree.

**[7]** In *Rodriguez*, we held that the prior version of the regulations codified at 28 CFR §§ 520.20 and 520.21 was invalid, because it "categorically exclude[d] inmates from RRC eligibility without considering the mandatory factors articulated in § 3621(b)." 541 F.3d at 1187. No such problem exists here. Although the November 14 Memorandum does set forth a presumption that RRC placements of longer than six months should occur only "when there are unusual or extraordinary circumstances justifying such placement[ ] and the Regional Director concurs," the Memorandum also admonishes BOP staff that they "cannot . . . *automatically* deny an inmate's request for transfer to a RRC" because "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]." The memorandum also reminds the BOP staff that they "must individually consider the request, just as they would any other request for lower security transfer." Further, the memorandum reminds the staff that when they review an inmate's transfer request, they should review the five factors set forth in 18 U.S.C. § 3621(b) that, we noted in *Rodriguez*, are "mandatory". *Rodriguez*, 541 F.3d at 1187. Accordingly, we conclude that the BOP's policy as set forth in the November 14 Memorandum does not violate the SCA.

### C. The Challenged Policies Were Not Promulgated in Violation of the APA

#### 1. The BOP's Determinations Were Not Arbitrary or Capricious in Violation of 5 U.S.C. § 706

[8] Petitioners also challenge the BOP's policies under the APA, 5 U.S.C. § 706, arguing that the policies were promulgated without empirical support and without a sufficiently articulated rationale. Under § 706, the APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be[ ] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Under the arbitrary and capricious standard, our review . . . is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009) (internal quotation marks omitted).

> A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made. Although we may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, we may not infer an agency's reasoning from mere silence.

*Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (citations omitted) (internal quotation marks omitted).

[9] In this case, the BOP relied on "Bureau experience" to explain its choice to require unusual circumstances and additional checks before placing prisoners in RRCs for longer than six months. It may have been preferable for the BOP to support its conclusions with empirical research.[9] However, it

---

[9]We note that Congress has required the BOP to make annual reports to the House and Senate Judiciary Committees of "any . . . information

was reasonable for the BOP to rely on its experience, even without having quantified it in the form of a study. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view *or the product of agency expertise*." (emphasis added)). The BOP has nearly 10 years of experience in placing inmates in RRCs, at least with respect to periods of six months or less. *See* Program Statement 7310.04, at 8 (noting that the program went into effect on Dec. 16, 1998). Although the BOP's experience with RRC placements of six months or less may not exactly parallel the issue here, its experience does provide some basis for understanding of how placements of varying lengths would affect most inmates. Accordingly, we cannot say that the BOP's determination was arbitrary or capricious.

## 2. The Challenged Policies Are Not Substantive Rules Subject to the Notice-and-Comment Requirement of 5 U.S.C. § 553

[10] "Under the APA, a federal administrative agency is required to follow prescribed notice-and-comment procedures before promulgating substantive rules." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009); *see* 5 U.S.C. § 553. "However, these notice and comment requirements are not applicable to 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.' " *Mora-Meraz*, 601 F.3d at 939 (quoting 5 U.S.C. § 553(b)(3)(A)). Of course, an agency cannot, "under the guise of interpreting a regulation . . . create *de facto* a new

_____

that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner." 18 U.S.C. § 3624(c)(5). No such reports are part of the record.

regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000).

We have previously distinguished a "general statement of policy," 5 U.S.C. § 553(b), from a substantive rule:

> The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is the extent to which the challenged [directive] leaves the agency, or its implementing official[,] free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case . . . .
>
> To the extent that the directive merely provides *guidance* to agency officials in exercising their discretionary power while preserving their flexibility and their opportunity to make individualized determination[s], it constitutes a general statement of policy . . . . In contrast, to the extent that the directive narrowly limits administrative discretion or establishes a *binding norm* that so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion, it effectively replaces agency discretion with a new binding rule of substant[ive] law.

*Colwell*, 558 F.3d at 1124 (quoting *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013-14 (9th Cir. 1987)) (all alterations but the second and the last in the original) (internal quotation marks omitted). Similarly, we have noted the distinction between interpretive rules and substantive rules:

> "Generally, agencies issue interpretive rules to clarify or explain existing law or regulations so as to advise the public of the agency's construction of the rules it administers." However, "[i]f a rule is inconsistent with or amends an existing legislative rule,

> then it cannot be interpretive." This is because a rule that is inconsistent with a rule promulgated subject to notice and comment would impose new rights or obligations and would require compliance with the § 553 procedures.

*Mora-Meraz*, 601 F.3d at 940 (alteration in the original) (internal citations omitted) (quoting *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001)).

**[11]** The ultimate question is "what did the new [memoranda] do?" *Gunderson*, 268 F.3d at 1154. As discussed above, the challenged policies are consistent with the statute. Further, the policies in the memoranda "merely provide[ ] *guidance* to agency officials in exercising their discretionary power while preserving their flexibility and their opportunity to make individualized determination[s]." *Colwell*, 558 F.3d at 1124 (second alteration in the original) (quoting *Mada-Luna*, 813 F.2d at 1013). The policies provide that in the normal case, six months is sufficient placement in a RRC, but the policies allow BOP staff to determine what constitutes the "unusual or extraordinary" circumstances for which six months is not sufficient. Similarly, the requirement that the Regional Director approve placements of more than six months merely assigns a particular official the responsibility of exercising the authority delegated to the BOP and its Director by statute. Although Petitioners provided statistics suggesting that this language ("unusual or extraordinary circumstances") has been interpreted strictly in some regions, including the BOP's Western Region (which encompasses FCI Sheridan), these statistics also indicate that greater numbers of prisoners in other regions have been placed in RRCs for longer than six months. These regional differences demonstrate that the BOP's rule allows staff to make individualized determinations and does not create a new binding rule of substantive law. Accordingly, we conclude that the challenged policies are not substantive rules; thus, they are not subject to the notice-and-comment requirements of § 553 of the APA.

### III. CONCLUSION

The SCA does not require the BOP to make any placements in a RRC for longer than six months; the statute affords the BOP the option to make placements up to 12 months. Because the agency's construction is entitled to some deference under *Skidmore*, and because the BOP used its experience in placing prisoners in RRCs in crafting its policies, we conclude that the policies are based on a reasonable construction of the SCA. Similarly, although documentation and empirical evidence may be desirable, the BOP permissibly relied on its experience administering RRC placements in crafting its policies, and those policies are not arbitrary or capricious. Finally, because the challenged policies are not binding rules, but instead allow implementing officials to use their discretion in individual cases, the BOP was not required to promulgate the policies through the APA's notice-and-comment procedures.

The judgment of the district court is **AFFIRMED.**