NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2887
_____

UNITED STATES OF AMERICA

v.

BRANDON PIPER,
                         Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 1-09-cr-00218-001
(Honorable Joel H. Slomsky)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: May 24, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

**I.**

Defendant Brandon Piper, then 19 years old, pooled his money with 16-year-old

E.B. and gave it to Amber Barger to purchase heroin on August 18, 2009.  Defendant

drove E.B. and Barger to purchase the drugs, and drove them to Barger's apartment where she injected E.B. with heroin. E.B. overdosed on the drugs and lost consciousness. Defendant, unsure what to do, drove to various locations for several hours attempting to revive E.B. with water and smelling salts before taking E.B. to the emergency room. E.B. was not breathing when he was admitted, and died a few hours later.

Six days into trial, after the prosecution rested, defendant pleaded guilty to aiding and abetting distribution of heroin.[1] The principal to the crime, Amber Barger, was not prosecuted in federal court, and was granted immunity for her testimony against defendant.[2] In her immunity agreement with the government, Barger agreed not to challenge the state court charges pending against her in the Cumberland County Court of Common Pleas. Barger applied for the accelerated rehabilitative disposition (ARD) program on May 17, 2010, which appeared on the public state court docket. Defense counsel told the District Court he had a copy of the state court docket by August, 2011. Defendant's trial commenced October 31, 2011, and defendant pleaded guilty on November 8, 2011. Amber Barger testified at defendant's trial. She was cross-examined about her federal immunity agreement and the leniency she expected in state court as a result of her cooperation. Defense counsel did not question Barger about her ARD application.

---

[1] Prior to trial defendant plead guilty to separate counts for distribution of heroin and distribution of marijuana, unrelated to the August 18 incident.

[2] The District Court was concerned the accomplice in this case was being prosecuted rather than the principal. But, the government explained to the court at the August 5, 2011 hearing they could not successfully prosecute Barger because the only evidence

Barger's state court docket was updated on February 16, 2012, showing her ARD application was still pending. On February 29, 2012, defendant filed a Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Plea of Guilty. In this motion, defendant's counsel contended he tailored his trial strategy, cross-examination of Barger, and presentation to the jury based on the government's representations she was going to plead guilty to the charges against her in state court. At a discovery hearing on August 5, the government told the District Court and defendant that it believed Amber Barger was going to plead guilty to the state court charges, because Barger's attorney told the government she was going to plead guilty. Motion Hr'g Tr. 46:3-7, Aug 5, 2011. Defense counsel noted that Barger might never have to plead guilty, to which the court responded, "Well, that's all a matter of cross-examin[ation]." *Id.* at 48:7-20. In response to defendant's February 29 motions, the government asserted it had no information regarding Barger's ARD application, as admission to the program is entirely within the discretion of the district attorney.[3] Barger was accepted into the ARD program on May 23, 2012.

**II.**[4]

**A.**

---

linking her to the heroine injection was her own statement, which was proffer protected. App. Motion Hr'g Tr. 42:2-21, Aug. 5, 2011.

[3] *Commonwealth v. Lutz*, 495 A.2d 928, 931 (Pa. 1985) (explaining Pa. R. Crim. P. 175-85).

[4] We review the district court's legal conclusions de novo, and review findings of fact for clear error. *United States v. Pellulo*, 14 F.3d 881, 886 (3d Cir. 1994). The District Court exercised jurisdiction over this case under U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3731. *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).

In *Brady v. Maryland,* the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ." 373 U.S. 83, 87 (1963). "[T]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The prosecution has constructive possession of evidence that must be disclosed when the evidence is known to a party acting on the government's behalf or its control, where the prosecution and the agency were part of a team or engaged in a joint effort, or where the prosecution had ready access to the evidence. *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006). The District Court found there was no suppression of evidence because it found no evidence the government could have known at the time of trial Barger would later be accepted into ARD.

**1.**

The duty to disclose includes impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In *Banks v. Dretke*, the government withheld that its key witness, the defendant's co-conspirator, was a paid government informant. 540 U.S. 668, 691 (2004) (finding the witness's "paid informant status[] qualifies as evidence advantageous to" the defendant). The witness's status was impeachment evidence because it showed the witness had a motivation to testify, and might have caused the jury to distrust the witness's uncorroborated testimony. *Id.* at 701.

4

Evidence that the government's key witness could avoid incarceration through ARD is indisputably favorable to the defense. But that is not the evidence defendant contends was withheld in this case. The evidence allegedly suppressed was the fact Barger was going to be accepted into the ARD program. But there is no indication the Cumberland County DA had decided he was going to grant Barger's ARD application at the time of trial or that the government could have known about that decision. The possibility of ARD was known to defendant months before trial and appeared on the public state court docket. As the District Court explained, defendant could have cross-examined Barger on her ARD application and introduced the state court docket as support.

Defendant did question Barger about her state court prosecution, and she testified she did not know whether she was going to jail, but believed the state would consider her cooperation in the federal case. Defendant has not accused Barger of perjury, and there is no suggestion Barger knew she was going to be accepted into ARD at that time. The allegedly suppressed evidence would have at most been cumulative of the favorable state court treatment the witness was questioned on at trial.

**2.**

Suppressed "evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 682). "[T]he omission must be evaluated in the context of the entire record," and "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *United States v. Agurs*, 427 U.S. 97, 112 (1976). "[M]ateriality does not require

5

demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Instead, "the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435).

In *Kyles* the Court found a witness's prior description of the killer was material because "the value of two of [the state's key] witnesses would have been substantially reduced or destroyed." *Kyles*, 514 U.S. at 441 (noting the witness "would have had trouble explaining how he could have described [the defendant], 6–feet tall and thin, as a man more than half a foot shorter with a medium build"). The Court concluded "'fairness' cannot be stretched to the point of calling this a fair trial." *Id.* at 454. Where the only witness linking the defendant to the crime falsely testified about an immunity agreement the government failed to disclose, the suppressed evidence was material. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The Court found the witness's credibility was "an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." *Id.* at 155.

Evidence of the victim's criminal record was not material in *Agurs*, even though it supported defendant's argument the victim had violent propensities and she acted in self defense. 427 U.S. at 114. The Court found that the victim's "prior record did not contradict any evidence offered by the prosecutor, and was largely cumulative of the evidence" showing "he was a violence-prone person." *Id.* at 100, 114. "[S]ince after

6

considering it in the context of the entire record" the evidence did not cast doubt on the verdict, "the prosecutor's failure to tender Sewell's record to the defense did not deprive respondent of a fair trial." *Id.*

Here, defendant's counsel questioned Barger on both her federal immunity and state court prosecution to impeach her testimony. Unlike the witness in *Giglio*, Barger truthfully testified about her immunity. Barger told the jury she expected to receive more favorable treatment in state court based on her testimony, and said she did not know whether she was going to go to jail. The possibility of ARD was part of the favorable treatment and was cumulative, just as the victim's criminal background was cumulative of the other evidence showing his violent propensities in *Agurs*. Defendant has not shown this evidence would probably have changed the outcome. Unlike the witness's contradictory statements in *Kyles*, the possibility of being accepted into ARD would not have "substantially reduced or destroyed" Barger's credibility. 514 U.S. at 441. Barger was already impeached for her motivation in testifying, including her expectation that her cooperation would lead to a reduced state court penalty. Moreover, defendant knew Barger had applied for ARD and chose to not question her about it. Accordingly, the ARD evidence does not "put the whole case in such a different light" to show a "reasonable probability of a different result."[5] *Strickler*, 527 U.S. at 290-91.

---

[5] The result here is a guilty plea. Presuming defendant can withdraw a guilty plea based on a *Brady* violation, defendant has failed to show misconduct by state agents. *See Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . . absent misrepresentation or other impermissible conduct by state agents. . . ."). Furthermore, defendant has failed to show

**B.**

"A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences. . . ." 18 U.S.C. § 3585(b). The Supreme Court held " a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, as respondent was, is 'released.'" *Reno v. Koray*, 515 U.S. 50, 57 (1995). In *Koray* the defendant was required to be confined in a community treatment center as a condition of bail. *Id.* at 53. The Court found this confinement could not be credited for time served because "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility. . . .'" *Id.* at 58.[6]

Defendant was confined to home detention and required to submit to drug tests as condition of his bail. Although he was confined at home, he was not detained in a penal or correctional facility. Indeed, he was not detained in any facility, unlike the defendant in *Koray* who was confined to a treatment center. Since defendant was not subject to official detention prior to sentencing, his home detention as a condition of bail cannot be credited as time served.

---

the alleged misconduct induced his decision to plead guilty. *Id.* at 755; *see also  Ferrara v. United States*, 456 F.3d 278, 291 (1st Cir. 2006) (explaining a defendant must show the misconduct was material to his choice to plead guilty).

[6] To the extent defendant argues he was entitled to more notice that his home confinement would not be credited as time served, he cites no case law to support that proposition, and, in fact, the opposite appears to be true. *See Cucciniello v. Keller*, 137 F.3d 721, 725 (2d Cir. 1998) ("[T]here is no constitutional requirement that [defendant]

8

**III.**

For the foregoing reasons, the District Court order denying defendant's motion to withdraw plea of guilty and motion for discovery in aid of motion to dismiss based on prosecutorial misconduct is affirmed.

---

had to be notified that home confinement would not be credited against a subsequent sentence . . . .").