(Slip Opinion)

# Home Confinement of Federal Prisoners After the COVID-19 Emergency

The Coronavirus Aid, Relief, and Economic Security Act authorizes the Director of the Bureau of Prisons to place prisoners in home confinement only during the Act's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning. Should that period end, or should the Attorney General revoke the finding, the Bureau would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2).

BOP's authority under 18 U.S.C. § 3621(a) and (b) does not provide an alternative basis for authorizing continued home confinement for prisoners ineligible for continuing home confinement under section 3624(c)(2).

January 15, 2021

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL BUREAU OF PRISONS

The Federal Bureau of Prisons ("BOP" or "the Bureau") has statutory authority to place a prisoner serving a term in a federal prison in home confinement for the concluding portion of his sentence. *See* 18 U.S.C. § 3624(c)(2). In connection with the COVID-19 pandemic, Congress expanded the authority of the Director of BOP to place federal prisoners in home confinement earlier than that statutory period. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) ("CARES Act"). The question is what happens to these prisoners once the pandemic emergency ends. At that time, some inmates will have completed their sentences or be sufficiently close to the end to be eligible for home confinement. Other inmates, however, may have a substantial time to go before becoming eligible. Although the pandemic emergency remains ongoing, the issue arises because BOP must plan for an eventuality where it might need to return a significant number of prisoners to correctional facilities.

We conclude that the CARES Act authorizes the Director of BOP to place prisoners in home confinement only during the statute's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning. *See id.* Should that period end, or should the Attorney General revoke the find-

1

ing, the Bureau would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2). We also conclude that the general imprisonment authorities of 18 U.S.C. § 3621(a) and (b) do not supplement the CARES Act authority to authorize home confinement under the Act beyond the limits of section 3624(c)(2).

## I.

Section 3621(a) of title 18 of the United States Code instructs BOP to maintain custody of a person sentenced to a term of imprisonment until "the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." Section 3621(b) assigns BOP the responsibility of "designat[ing] the place of the prisoner's imprisonment" at a "facility," subject to several considerations such as bed availability, the security designation of the prisoner, and proximity to the prisoner's residence. Section 3621(b) also authorizes the Bureau "at any time," subject to those same factors, to "direct the transfer of a prisoner from one penal or correctional facility to another."

Section 3624(c) governs both home confinement and other forms of what the statute calls "prerelease custody"—lower-security conditions of confinement that help prepare a prisoner for eventual release. Section 3624(c)(1) provides that BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," such as a community correctional facility. Section 3624(c)(2) then states that BOP "may" use its prerelease custody authority to place a prisoner in home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Section 3624(c)(2) thus constrains BOP's confinement authority by limiting a prisoner's time in home confinement to no more than six of the final months of a prisoner's term.

Recognizing that the COVID-19 pandemic was having a substantial effect on federal correctional institutions, Congress in section 12003(b)(2) of the CARES Act expanded BOP's preexisting discretion to employ home confinement. Section 12003(b)(2) provides that

> [d]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

The "'covered emergency period'" starts on "the date on which the President declared a national emergency under the National Emergencies Act with respect to the Coronavirus Disease 2019 (COVID-19)" and ends "on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act § 12003(a)(2), 134 Stat. at 516 (citation omitted).

The President declared the COVID-19 pandemic a national emergency on March 13, 2020, two weeks before the enactment of the CARES Act. *See* Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020). On April 3, 2020, the Attorney General found that COVID-19 emergency conditions were "materially affecting the functioning of the Bureau of Prisons." Memorandum for the Director of the Bureau of Prisons from the Attorney General, *Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 1 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf ("Attorney General Memorandum").

You have advised us that following that determination, the BOP Director exercised his CARES Act authority by transferring thousands of federal prisoners into home confinement. As of December 2020, BOP had transferred 18,112 inmates to home confinement since enactment of the authority, out of a federal prison population of approximately 150,000 inmates. *See* Statement of Michael D. Carvajal, Director, BOP, Before the Subcommittee on Crime, Terrorism, and Homeland Security, U.S. House Judiciary Committee 2, 6 (Dec. 2, 2020) ("Carvajal Testimony"). We understand that approximately 40 percent of those prisoners would not have been eligible for such transfers absent the emergency authority.[1]

---

[1] *See* E-mail for Jennifer Mascott & Conor Clarke, Office of Legal Counsel, from Kenneth P. Hyle, BOP, *Re: Draft OLC Opinion on the CARES Act Home Confinement Authority* (Jan. 14, 2021, 2:46 PM).

BOP has indicated that it will continue to conduct individualized assessments to make home confinement placements for the duration of the pandemic. *Id.* at 6. These transfers have carried out the Attorney General's instructions to, where possible, move vulnerable inmates with Centers for Disease Control-established COVID-19 risk factors out of institutions with significant infection rates, following a 14-day quarantine period to prevent transmission during transfer. Attorney General Memorandum at 1–2.

The question now is what will happen when BOP's emergency authority under section 12003(b)(2) of the CARES Act ends. That issue has important practical consequences because many of these thousands of prisoners are currently in home confinement earlier than section 3624(c)(2) would permit. You have explained that BOP has always had the discretion to return inmates to BOP facilities upon, or even prior to, the termination of the covered pandemic period. But you have suggested that BOP might continue home confinement placements afterwards, on the theory that BOP properly exercised its authority to "lengthen the maximum amount of time" for home confinement during the emergency and that the consequences of those decisions might continue, even though the authority to make the decision in the first instance has lapsed. *See* Bureau of Prisons, *Home Confinement Under the CARES Act* at 2 (Nov. 20, 2020).

We agree that the CARES Act does not alter BOP's discretion to return prisoners to facilities either during the covered period or right when it ends. But once that authority expires, we believe that BOP must respect the time limits under section 3624(c)(2) for all federal prisoners, including those who had been transferred to home confinement prior to the final months of their term under the special CARES Act placement authority.

## II.

Section 12003(b)(2) allows the Director, "[d]uring" the covered emergency period and based on a finding from the Attorney General, to "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement." Once the Director's authority in section 12003(b)(2) expires, then so too does his authority to keep inmates in home confinement under this provision.

Section 12003(b)(2) is the sole source of the Director's "authori[ty]" to "lengthen the maximum amount of time" that applies to the sentence of an inmate subject to home confinement "under the first sentence of section 3624(c)(2)." Section 3624(c)(2), in turn, limits a term of home confinement to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." In connection with the pandemic, Congress conferred upon the Director broad authority to disregard the ordinarily strict time limitations of section 3624(c)(2) in favor of any length that he "determines appropriate." The scope of that authority, however, is keyed to, and circumscribed by, the emergency nature of the circumstances that Congress addressed both in this particular provision and in provisions throughout the bill.

Accordingly, we think that once the CARES Act authority evaporates, the maximum term of home confinement must govern. *See 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 600 (1951) ("[W]e must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop."); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380 (2020) ("Our analysis begins and ends with the text." (internal quotation marks omitted)); *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 174–75 (2003) (Scalia, J., dissenting) ("When a power is conferred for a limited time, the *automatic* consequence of the expiration of that time is the expiration of the power."). Once the CARES Act authority expires, BOP's obligation to respect section 3624(c)(2)'s time limit applies to all prisoners remaining in BOP custody, including those who had been placed early in home confinement in response to the COVID-19 emergency.

This reading of section 12003(b)(2) is consistent with the structure of the CARES Act, which provided a variety of forms of temporary emergency relief to address a once-in-a-century global pandemic. *See, e.g.*, CARES Act § 1109 (providing loan programs during the national emergency); *id.* § 1113 (authorizing bankruptcy relief to address the emergency); *id.* § 1114 (providing emergency rulemaking authority to the Administrator of the Small Business Administration); *id.* § 1102(a)(2) (ending the "covered period" for paycheck protection on June 30, 2020); *id.* § 1108(c)(1) (authorizing the waiver, for a 3-month period starting on the date of enactment, of requirements that minority business centers provide

matching funds when receiving certain federal grants if the center is unable to raise the funds or has lost revenue); *id.* § 2102(b), (c)(2) (creating a new unemployment assistance benefit, for people otherwise ineligible for such compensation, that terminates after 39 weeks); *id.* §§ 3201–3226 (covering health care provisions during the national emergency). The Director has used the particularized pandemic-related emergency authority in the CARES Act to put thousands of prisoners in home confinement who were not otherwise eligible, including inmates whose terms of imprisonment might stretch far beyond the pandemic—long after the emergency conditions that prompted the granting of this authority will have ceased, and well beyond the default time limits for home confinement specified in section 3624(c)(2). If Congress had fundamentally altered the structure of home confinement beyond the emergency circumstance that prompted the enactment of section 12003(b)(2), then it would have said so. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (recognizing that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions").

This interpretation finds further support from section 12003's expiration provision, which specifies that the Director's expanded discretion over home confinement ends "on the date that is 30 days *after* the date on which the national emergency declaration terminates" (emphasis added). If Congress had expected that the termination of the Director's expanded authority would have no operational effects on prisoners already in home confinement, then his placement authority could simply have terminated with the emergency. *See, e.g.*, *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018) (noting that "surrounding statutory structure" may reinforce a conclusion about an individual provision); *cf. Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) (finding confirmation for the Court's interpretive analysis where an alternative reading would make aspects of the relevant statutory and regulatory scheme unnecessary). We think that this 30-day period suggests that Congress had recognized that the termination of the emergency would have operational consequences and thus gave BOP 30 days to engage in the logistical operations needed to remove

prisoners from home confinement who were not otherwise eligible to serve there.

We do not believe that an alternative interpretation of section 12003(b)(2)—one that reads the decision "to place a prisoner in home confinement" as though it were a discrete action requiring statutory authority only at the time that it is made—would be tenable. The decision "to place" a prisoner in home confinement is not a permanent, final decision, and BOP has the discretion to reconsider home confinement at any point. That decision requires ongoing action, and therefore continuing legal authority. *Cf.* CARES Act § 12003(b)(2), 134 Stat. at 516 (defining the emergency authority as authority to "*lengthen* the maximum amount of time" for the Director's exercise of home confinement authority—action involving an ongoing time period (emphasis added)); 8 *Oxford English Dictionary* 825 (2d ed. 1989) ("lengthen": "[t]o make longer, increase the length of"). BOP and the probation system, further, have a continuing relationship with prisoners in prerelease custody and home confinement. Under section 3624(c)(3) of title 18, for instance, the United States probation system "shall, to the extent practicable, offer assistance" to prisoners in home confinement. BOP's home confinement program guidance further contemplates daily monitoring, weekly in-person meetings, drug and alcohol testing, counseling, and more. *See generally* BOP Program Statement, CCD No. 7320.01 (Sept. 6, 1995) (updated and reissued Dec. 15, 2017) ("Home Confinement Program Statement"). These ongoing administrative duties make clear that the decision to place a prisoner in "home confinement" is not a one-time event and that BOP retains the discretion to reassess the prisoner's status at any time during home confinement. The time limits of section 3624(c)(2) therefore apply.

## III.

Separate from the CARES Act, you have suggested that BOP may have discretion under 18 U.S.C. § 3621(a) and (b) to keep prisoners in home confinement who had been properly placed there during the emergency period.[2] Indeed, the home confinement statute makes clear that nothing in it "shall be construed to limit or restrict" the Director's authority "under

---

[2] *See* E-mail for Liam P. Hardy et al., Office of Legal Counsel, from Kenneth Hyle, BOP, *Re: 2002 OLC Memorandum on BOP Discretion* (Dec. 7, 2020, 9:27 AM).

section 3621." *Id.* § 3624(c)(4). But we do not agree that BOP's authority under section 3621(a) and (b) provides additional discretionary authority to address home confinement in the first place.

## A.

Section 3621 states, in relevant part, that persons sentenced to imprisonment "shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed." *Id.* § 3621(a). It then provides standards by which the Bureau "shall designate the place of the prisoner's imprisonment"—but only at a "penal or correctional facility." *Id.* § 3621(b). The text indicates that BOP is not free under this provision to designate a "place" of any type as the site of the prisoner's confinement, but rather contemplates that it will be at a "facility." *See id.* ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall . . . place the prisoner in a facility."); *id.* ("In designating the place of imprisonment or making transfers under this subsection, . . . [t]he Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another."); *id.* § 3622 (specifying when a prisoner may be temporarily released from the "place of his imprisonment" before being "return[ed] to the same or another facility"). We do not believe that home confinement constitutes a "facility" within the meaning of section 3621(b).

The statute does not define "facility," but the ordinary meaning of the term is not readily understood to mean a "home." *Compare Webster's Third New International Dictionary* 812–13 (1961) (defining "facility" as "something" like "a hospital," that is "built . . . or established to perform some particular function or to serve or facilitate some particular end"), *with id.* at 1082 (defining "home" as "the house and grounds . . . habitually occupied by a family"); *compare also The Random House Dictionary of the English Language* 690 (2d. ed. 1987) (defining "facility" as "something designed, built, installed, etc., to serve a specific function affording a convenience or service," such as "transportation facilities" or "educational facilities" or "a new research facility"), *with id.* at 913 (defining "home" as "a house, apartment, or other shelter that is the usual residence of a person"). Other provisions in title 18 speak of "facility" in a manner inconsistent with thinking the term would include a "home." Section 3585 of title 18, for instance, provides that "a term of imprisonment" com-

mences on a date connected to the prisoner's transportation to "the official detention facility at which the sentence is to be served." Section 3624 itself reinforces the distinction between a "home" and a "facility": section 3624(c)(1) refers to a "community correctional *facility*" (emphasis added)—a reference followed immediately by subsection (c)(2)'s separate provision governing "home confinement." *See also* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, div. B, § 2411(a)(1), 116 Stat. 1758, 1799 (2002) (distinguishing between "community corrections facilities" and "home confinement"). And section 3621(b) contrasts a prisoner's "residence" with his "place of imprisonment" and "facility," requiring BOP to ensure to the extent practicable that the imprisonment facility is within 500 miles of the prisoner's primary residence. This distinction would be anomalous if a "facility" could, under the discretion of that provision, include one's ordinary residence or home.

This reading accords with the few district court decisions that have similarly observed that BOP's discretion under section 3621(b) to select a "penal or correctional facility" does not extend to home confinement under the current version of 18 U.S.C. § 3624(c)(2).[3] Numerous courts have similarly read section 3624(c)(2) to impose a firm limit on BOP's home confinement discretion.[4] We have not identified any case concluding otherwise.

---

[3] *See, e.g.*, *United States v. Orozco*, No. 3:15-CR-00038-RCJ-WGC, 2020 WL 3047471, at *1 n.1 (D. Nev. June 8, 2020) ("While Congress ordered the BOP to consider court recommendations about the most appropriate 'penal or correctional facility' in § 3621(b), it failed to include 'home confinement' in this provision."); *Toole v. Krueger*, No. 12-CV-2445-PJS-TNL, 2012 WL 6621681, at *3 (D. Minn. Dec. 19, 2012) ("It may be true that an inmate's home is not a 'penal or correctional facility' within the meaning of § 3621(b).").

[4] *See Bonneau v. Salazar*, 754 F. App'x 624, 624 (9th Cir. 2019) ("18 U.S.C. § 3624(c)(2) barred the BOP from placing him in home confinement for more than six months or 10 percent of the underlying sentence, whichever is less."); *Guess v. Werlinger*, 421 F. App'x 215, 217 (3d Cir. 2011) ("The 6 months of home confinement is not additional to the 12 months of prerelease custody. . . . We also reject Guess's contention that the scheduling of the prerelease hearing at 17 to 19 months before a projected release date runs afoul of 18 U.S.C. § 3621(b)."). Our reading of the statute also is consistent with multiple district court decisions to have considered the issue. *See, e.g.*, *Lyttle v. Inch*, No. 2:17-CV-00153-JMS-DLP, 2018 WL 1410192, at *2 (S.D. Ind. Mar. 21, 2018) ("[T]his statute gives the BOP discretion to place Mr. Lyttle in a community correctional facility

Our interpretation is also consistent with a related body of precedent interpreting section 3585(b) of title 18, which mandates that "[a] defendant . . . be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." The Supreme Court has held that a defendant must be in a "penal or correctional facility," as used in section 3621(b), to receive credit for "official detention." *See Reno v. Koray*, 515 U.S. 50, 58 (1995). Lower courts have applied *Koray* to conclude that "home detention" does not constitute time in a "penal or correctional facility" for purposes of this provision. *See, e.g.*, *United States v. Piper*, 525 F. App'x 205, 209–10 (3d Cir. 2013) ("Although he was confined at home, he was not detained in a penal or correctional facility."); *United States v. Polydore*, 493 F. App'x 496, 506 (5th Cir. 2012) (Owen, J., concurring) ("Although confinement in a community center was at issue in *Koray*, and the statute under scrutiny was § 3585, the rationale of *Koray* applies with equal force to home detention."). We think that section 3624(c)(2) should be given a similar reading.

Finally, our reading is consistent with BOP's own regulations and program guidance. A 2008 interim rule (while not currently in force) stated that "[i]nmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months." 28 C.F.R. § 570.21(b).[5] BOP's own home confinement program guidance emphasiz-

---

for no more than 12 months and in home confinement for no more than 6 months. Any determination must be made in a manner consistent with the five factors in § 3621(b)."); *United States v. Miranda*, No. 3:16-CR-00250-GPC, 2017 WL 3219941, at *3 n.2 (S.D. Cal. July 28, 2017) ("Although Miranda has asked the Court to grant him three months in home confinement, the Court notes that the maximum time allowable in home confinement is 'the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.'" (citation omitted)).

[5] This rule was initially promulgated in 2008 as an interim final rule. *See* Pre-Release Community Confinement, 73 Fed. Reg. 62,440, 62,443 (Oct. 21, 2008). While this text remains codified, *see* 28 C.F.R. § 570.21(b) (2020), the interim rule was vacated on procedural grounds for failure to follow Administrative Procedure Act notice-and-comment procedures and was not finalized. *See Sacora v. Thomas*, No. CV 08-578-MA, Doc. No. 57 at 22–25, 34 (D. Or. June 16, 2010) (vacating the rule for failure to establish good cause to forgo notice and comment); *see also Sacora v. Thomas*, 628 F.3d 1059,

es that it "does *not* have statutory authority to designate a home confinement program for an inmate at the beginning of his or her sentence," given section 3621(b)'s requirement that the Bureau "designate any available *penal or correctional* facility as the place of a prisoner's imprisonment." Home Confinement Program Statement at 1; *see also id.* att. B, at 2 ("Inmates on home confinement shall return to the facility at least twice each week."); BOP, *Legal Resource Guide to the Federal Bureau of Prisons* 46 (2019) ("Inmates may participate in home confinement only during the last 10% of their sentence or 6 months prior to their Good Conduct Release date, whichever is less."). We think these statements clearly rule out an interpretation that section 3621(a) and (b) provide BOP with freestanding authority to permit home confinement of any duration.

## B.

It might be argued, however, that this conclusion conflicts with court decisions holding that, under a prior version of the statute, BOP's authority under section 3621(b) included discretionary authority to order an inmate into prerelease custody separate from the timing provisions of section 3624(c). *See Rodriguez v. Smith*, 541 F.3d 1180, 1184–85 (9th Cir. 2008); *Wedelstedt v. Wiley*, 477 F.3d 1160, 1166–67 (10th Cir. 2007); *Goldings v. Winn*, 383 F.3d 17, 28–29 (1st Cir. 2004); *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). These decisions were contrary to an opinion this Office issued in 2002, which had concluded that the discretionary authority in section 3621(b) did not give BOP such authority. *See* Memorandum for Larry D. Thompson, Deputy Attorney General, from M. Edward Whelan III, Principal Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment* at 6–7 (Dec. 13, 2002) ("*Community Confinement*").

We need not revisit this debate because the reasoning of these court decisions has been overtaken by subsequent amendments to the statute—in particular, by amendments made to the statute in the Second Chance

---

1065 n.6 (9th Cir. 2010) (noting that the vacatur order was not appealed). BOP proposed an identical rule for notice and comment in 2011, *see* Pre-Release Community Confinement, 76 Fed. Reg. 58,197 (Sept. 20, 2011), but no final rule was promulgated.

Act of 2007, Pub. L. 110-199, 122 Stat. 657 (2008).[6] These amendments substantially altered the framework for prerelease custody and for home confinement. Among other things, the Act created a separate subsection addressing home confinement, with an independent limitation requiring that this form of prerelease authority only "be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."[7] 18 U.S.C. § 3624(c)(2); Pub. L. 110-199, § 251(a), 122 Stat. at 693. By so doing, the amended statute distinguished between prerelease custody more generally, including in a "community correctional facility," and prerelease custody in "home confinement."

These amendments mooted the disagreement between our 2002 *Community Confinement* opinion and the several circuit court decisions that addressed BOP's discretion to place prisoners in community correctional facilities. In 2004, the First and Eighth Circuits reasoned that the pre-Second Chance Act time limit—"not to exceed six months, of the last 10 per centum of the term"—described only the period for which BOP was *required* to consider the use of community corrections, not the maximum period for which it was *authorized* to use community corrections. *Goldings*, 383 F.3d at 26 (making the distinction "between a qualified obliga-

---

[6] Between 1990 and 2008, 18 U.S.C. § 3624(c) read:

> *Pre-release custody.*—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

BOP's current home confinement program statement continues to refer to this pre-2008 text of 28 U.S.C. § 3624(c). *See* Home Confinement Program Statement at 1.

[7] We note that section 602 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, revised 18 U.S.C. § 3624(c)(2) by adding a second sentence that is not relevant here: "The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.* § 602, 132 Stat. at 5238. The First Step Act also created a separate home confinement program for low-risk offenders—now codified at 18 U.S.C. § 3624(g)—that the CARES Act does not mention and that we do not consider here. *Id.* § 102(b), 132 Stat. at 5210–13.

tion imposed on the BOP and a grant of discretionary authority to it"); *Elwood*, 386 F.3d at 847 (relying on *Goldings* to reach a similar conclusion).[8] Therefore, those courts held that BOP retained its discretionary authority to extend prerelease custody to community correctional facilities beyond the specific time window in then-section 3624(c). But the Second Chance Act amended the statute to include in section 3624(c)(2) an express limit on any such discretionary authority as it applies to home confinement: BOP "may" (not "shall") use home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

The Second Chance Act also distinguished prerelease custody in a community correctional facility from home confinement. The circuit court decisions involved inmates who wished to be transferred to community correctional facilities. *See Goldings*, 383 F.3d at 18, 28; *Rodriguez*, 541 F.3d at 1181 & n.1; *Wedelstedt*, 477 F.3d at 1161, 1166; *Elwood*, 386 F.3d at 843. In that context, these courts reasoned that "[a] community correction center is a correctional facility and therefore may serve as a prisoner's place of imprisonment." *Goldings*, 383 F.3d at 28; *see Elwood*, 386 F.3d at 846 (noting that a community correctional facility is a "penal or correctional facility"). But prior to the Second Chance Act, it was not clear whether or how such reasoning extended to home confinement: the pre-Second Chance Act version of the statute did not distinguish between "home confinement" and other forms of prerelease custody; all such authorities were included.[9] But the Second Chance Act sets off "home

---

[8] The Ninth and Tenth Circuits similarly concluded that the pre-Second Chance Act statutory scheme did not cap the maximum time frame authorized for home confinement, finding unlawful BOP regulations that categorically excluded prerelease custody outside of the section 3624 time limits. *See Rodriguez*, 541 F.3d at 1184–87; *Wedelstedt*, 477 F.3d at 1166–67.

[9] *Goldings* itself acknowledged, but left unresolved, the question of whether a "home" could constitute a "penal or correctional facility" and thus a "place of imprisonment." *See* 383 F.3d at 28 (internal quotation marks omitted); *see also United States v. Cintrón-Fernández*, 356 F.3d 340, 346 n.6 (1st Cir. 2004) ("[W]e need not reach the issue of whether Cintron-Fernandez's home could ever qualify as a 'penal or correctional facility' under 18 U.S.C. § 3621(b)."). Prior to enactment of the Second Chance Act, however, several district courts relied on the reasoning of *Goldings* and *Elwood* to suggest that BOP's section 3621(b) authority encompassed home confinement. *See, e.g., Goebel v. Morrison*, No. 06-168-JRT-SRN, 2006 WL 1314322, at *2 (D. Minn. May 12, 2006) (ordering the government "to immediately reconsider its decision as to whether petitioner

confinement" in a statutory subsection separate from the subsection generally authorizing prelease custody, including custody at a "community correctional facility." The decisions interpreting the earlier version of the statute therefore do not undermine our conclusion that home confinement does not involve confinement at a "facility" for purposes of section 3621(b).

If BOP had general discretion to place prisoners in home confinement under section 3621, then many other statutory provisions would have been unnecessary. Most notably, there would have been no need for Congress to carefully "lengthen the maximum" home confinement time in the CARES Act—surplusage that would deprive the text of meaning. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992) ("[A] statute must, if possible, be construed in such fashion that every word has some operative effect."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) (explaining the canon that no word or provision "should needlessly be given an interpretation that causes it to . . . have no consequence" (citing *United States v. Butler*, 297 U.S. 1, 65 (1936)). There would have been no point to Congress separately addressing, and imposing time constraints on, home confinement authority through the Second Chance Act, because BOP would have already possessed a home confinement discretion free from any such limits under section 3621.[10] And there would have been no reason for Congress, in a separate prerelease custody program for low-risk offenders authorized by the First Step Act of 2018, to mention that the "time

---

should be assigned to a Community Corrections Center or home confinement, in light of the criteria set forth in 18 U.S.C. § 3621(b)"); *Young v. Caraway*, No. CIV. 05-1476-JNE-JJG, 2006 WL 562143, at *9 (D. Minn. Mar. 7, 2006) (finding "that § 3621(b) requires the BOP to consider the five factors listed in the statute when deciding whether, and when, a prisoner should be assigned to a CCC or home confinement arrangement"). But for reasons we have explained, we think that the subsequent Second Chance Act provisions eliminate that reading as a plausible interpretation of sections 3621 and 3624.

[10] In enacting the Second Chance Act of 2007, Congress created a new section 3624(c)(2), consisting of just the first sentence of the current provision, that imposed a time limit on the duration of home confinement as a form of prerelease custody. *See* Pub. L. 110-199, § 251(a), 122 Stat. at 692–93. The current second sentence of subsection 3624(c)(2), requiring the Bureau to place lower-risk prisoners in home confinement "to the extent practicable" was enacted approximately ten years later, in the First Step Act of 2018. *See* Pub. L. 115-391, § 602, 132 Stat. 5194, 5238.

limits" of section 3624(c) "shall not apply to prerelease custody" under the newly created subsection 3624(g). First Step Act of 2018, Pub. L. 115-391, § 102(b), 132 Stat. 5194, 5208–13 (quoted language codified at 18 U.S.C. § 3621(g)(10)). The Supreme Court has noted "time and time again" that it is "obliged to give effect, if possible, to every word Congress used." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018) (internal quotation marks and citation omitted). We cannot adopt an interpretation of the text that would result in so much surplusage across so many different sections of the Code.

## IV.

Because the CARES Act authorizes the Director of BOP to place prisoners in home confinement only while the authority of section 12003(b)(2) remains in effect, BOP must recall prisoners in home confinement to correctional facilities once that authority expires, unless they would otherwise be eligible for home confinement under section 3624(c)(2). BOP's authority under 18 U.S.C. § 3621 does not provide an alternative basis for authorizing continued home confinement for prisoners ineligible for home confinement under section 3624(c).

JENNIFER L. MASCOTT
*Deputy Assistant Attorney General*
*Office of Legal Counsel*